UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ESTATE OF SWANNIE HER,**
et al.,

    Plaintiffs,

  v.                                    Case No. 17-CV-1015

**KRAIG SADOWNIKOW, et al.,**

    Defendants.

---

**DECISION AND ORDER ON DEFENDANTS' MOTION
FOR A PROTECTIVE ORDER AND PLAINTIFFS' MOTION TO COMPEL**

---

      This action arises from the drowning death of Swannie Her on June 11, 2016 at the City of West Bend's Regner Park. The plaintiffs are the estate of Swannie Her, her parents, and her nine siblings (collectively "the plaintiffs"). The defendants are the City of West Bend ("the City"), the City's insurer, Parks and Recreation Director Craig Hoeppner, and the lifeguards working the day of the incident (collectively "the defendants"). The plaintiffs allege federal and state law causes of action against the defendants, including a "Fourteenth Amendment Deprivation," negligence, violation of Wisconsin's Safe Place Statute, and wrongful death. (Amended Complaint, Docket # 17.)

      Currently before me is the defendants' motion for a protective order quashing the plaintiffs' Fourth Request for Production to the extent that it seeks materials contained within a claim adjustor's file and quashing the deposition notice of James Pohlman, an outside claims adjustor hired by the City's insurer to investigate the incident. (Docket # 31.) The plaintiffs have filed a "counter motion to compel," requesting production of the

documents at issue and the deposition of Pohlman. (Docket # 46.) For the reasons explained in this decision, the defendants' motion for a protective order is granted in part and denied in part and the plaintiffs' motion to compel is granted in part and denied in part.

## BACKGROUND

The plaintiffs allege that six-year-old Swannie Her was attending her cousin's birthday party on June 11, 2016 at Regner Park, a municipally owned and operated park located in the City of West Bend. Swannie Her drowned in the Regner Park swimming pool. The plaintiffs served a Notice of Claim on the City of West Bend on October 5, 2016. However, prior to the filing of a notice of claim, James Pohlman, an outside claims adjustor who was retained by the City's insurer to investigate the incident at issue in this lawsuit, provided documents to the City's insurer in conjunction with the investigation. (Defs.' Br. in Supp. of Protective Order at 7, Docket # 32.) The plaintiffs served its Fourth Request for Production, requesting the following documents:

- "All post-incident investigation notes, records, email, and/or documents prior to October 5, 2016, relative to the drowning death of Swannie Her. (This request is propounded on the City of West Bend's insurers, and its insurers' agents, only; Plaintiff is not seeking any portion of the claims file that post-dates the Notice of Claim served on the City of West Bend)."
- The "complete claims file reflecting its investigation into the death of Swannie Her through the date of October 5, 2016."
- "All communications and/or investigative reports exchanged between any City of West Bend employee with [the City's municipal liability insurers] as it relates to the drowning death of Swannie Her prior to October 5, 2016."

2

(Affidavit of Matteo Reginato ("Reginato Aff.") ¶ 4, Exh. 2, Docket # 35.) The defendants claimed the documents sought were protected by the work product doctrine and produced a privilege log. (*Id.*) The privilege log indicated that the following documents were being withheld pursuant to the work product doctrine:

- First Summary Report of Investigation, which included recorded conversations of witnesses, 48 photographs of the Regner Park Pond, a map showing measurements of the pond, a map showing the location of the lifeguards, Swannie Her's GoFundMe page (obtained online), and a letter dated June 16, 2016 to the West Bend P.D. requesting a copy of its report. These documents are dated June 27, 2016.
- Second Summary Report of Investigation, dated June 28, 2016.
- Third Summary Report of Investigation, dated July 12, 2016.
- Fourth Summary Report of Investigation, dated July 26, 2016.
- Fifth Summary Report of Investigation, dated August 29, 2016.

(Docket # 35-2.)

The plaintiffs also served a notice of video deposition *duces tecum* on Pohlman. (Reginato Aff. ¶ 3, Exh. 1.) The defendants argue Pohlman's deposition notice should be quashed because Pohlman has no personal knowledge of any of the facts at issue and thus his deposition will not lead to the discovery of relevant information, further, his documents are protected work product.

**LEGAL STANDARD**

Generally, the Federal Rules of Civil Procedure allow for broad discovery. Fed. R. Civ. P. 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense." Despite the general breadth of discovery, I may limit discovery where the information sought can be obtained from some other source that is more convenient, less burdensome, or less expensive, or outside the scope as permitted by Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(i) & (iii). Pursuant to Rule 26(c), the court may, for good cause, issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. A trial court has broad discretion in determining the scope of discovery. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). Under Fed. R. Civ. P. 37, a party is permitted to file a motion to compel discovery where another party fails to respond to a discovery request or where the party's response is evasive or incomplete. *See* Fed. R. Civ. P. 37(a)(3)-(4).[1]

Rule 26(b)(3) codifies the work product doctrine. It states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." However, such material may be discovered if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A)(ii).

---

[1]Again, the defendants move for a protective order pursuant to Rule 26(c) and the plaintiffs move to compel production of documents pursuant to Rule 37. Both rules require the movant to include a certification that the movant has in good faith conferred or attempted to confer with the other party prior to requesting court action. Both parties have failed to include the certifications that the respective rules say the movants "must include." Thus, I could deny both parties' motions on this ground alone and order the parties to confer. Despite the parties' failure to comply with the Federal Rules, I will address the motions on the merits. The parties are on notice; however, that the Federal Rules require such a certification and further such motions will not be entertained without inclusion of the required certification.

The work product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts. *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 622-23. (7th Cir. 2010). "Work-product protection applies to attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.* at 622 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir.1996) (internal quotation marks omitted)). "There is a distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation' and documents prepared because 'some articulable claim, likely to lead to litigation, [has] arisen.'" *Id.* (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983)). Only documents prepared in the latter circumstances receive work product protection. *Id.*

"A party withholding otherwise discoverable materials under a claim that they are privileged or protected as work product bears the burden of proving that the materials are in fact immunized from discovery." *Brooks v. Gen. Cas. Co. of Wisconsin*, No. 06-CV-996, 2007 WL 218737, *2 (E.D. Wis. Jan. 26, 2007) (citing *United States v. Hamilton*, 19 F.3d 350, 354 (7th Cir. 1994)).

## ANALYSIS

The issue before me is whether documents created by Pohlman in investigating Swannie Her's death and provided to the City's insurer are discoverable and whether Pohlman can be deposed in this matter. The plaintiffs argue that Pohlman's file consists of materials prepared in the ordinary course of business rather than for purposes of litigation;

5

thus, the file does not constitute protected work product. The plaintiffs further argue that because Pohlman did not act at the direction of an attorney, none of the documents in question constitute work product. I will address each argument in turn.

*1. Production of Claims File*

Addressing the plaintiffs' second argument first, the plaintiffs cite several cases for the proposition that a document is not protected work product unless it was created at the direction of an attorney. *See, e.g.*, *Thomas Organ Co. v. Jadranska Slobodna Plovibda*, 54 F.R.D. 367 (N.D. Ill. 1972); *Allendale Mutual Insurance Co. v. Bull Data Systems*, 152 F.R.D. 132 (N.D. Ill.1993); *Hamed v. General Accident Insurance Co.*, 112 F.R.D. 213 (N.D. Ind. 1986); *Mazan v. Schmelzer*, 111 F.R.D. 470 (N.D. Ind. 1986). I do not read these cases so narrowly. The courts in these cases were concerned with whether the documents in question were created in anticipation of litigation or in the ordinary course of business. "Rule 26 clearly protects party, and not just attorney, preparation" and "the fact that a particular communication may not go to an attorney does not prevent its being work product." *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 520 (N.D. Ill. 1990).

In *Sandra T.E.*, the Seventh Circuit disagreed with the district court's conclusion that the work product doctrine did not apply because a law firm was hired to act as an investigator as opposed to an attorney. 600 F.3d at 622. The court noted that there is a distinction between precautionary documents created in the ordinary course of business for the remote prospect of litigation and documents prepared because of some articulable claim likely to lead to litigation has arisen. *Id.* Thus, the issue is less whether an attorney is pulling the strings of the investigation, and more of the purpose for which the documents were created.

The plaintiffs make much of the fact that Pohlman (a non-attorney) conducted his investigation at the behest of Ginger Kimpton (also a non-attorney). Kimpton is a Casualty Claims Adjustor for Statewide Services (who administers the City's insurer's claims) and Kimpton acts under the authority and direction of Anthony Conlin (an attorney), the Claims Director for Statewide Services. (Affidavit of Anthony Conlin ("Conlin Aff.") ¶ 2-6, Docket # 33.) The plaintiffs argue that Pohlman was one too many people removed from the attorney (Conlin) to allow his investigative materials to constitute work product. Again, the issue is whether the documents were created in anticipation of litigation, not whether an attorney was pulling the strings. Even under the plaintiffs' interpretation, however, it appears Conlin initiated the investigative process in this case and did so because he anticipated litigation due to the drowning death of a child. (*Id.* ¶¶ 7-9.) Thus, I do not find that Pohlman's claims file is discoverable on the basis that his investigation was not directed by an attorney.

Turning to the plaintiffs' first argument, I must address whether Pohlman's file was created in the ordinary course of business or in anticipation of litigation. As an initial matter, a claim of privilege is not a blanket claim—it is asserted on a document-by-document basis. *Perez v. Mueller*, No. 13-CV-1302-PP, 2016 WL 5372811, at *3 (E.D. Wis. Sept. 26, 2016). Thus, the defendants cannot argue that a claims file, in and of itself, is privileged without delving into the particular documents contained in the file. The general discoverability of an insurance claims file is a much litigated issue. The defendants rely principally on the distinction between first party and third party insurance claims in arguing the claims file is not discoverable. When an insured presents a first party claim, the insured is asking for payment under the terms of the insurance contract between the insured and the

insurance company. *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993). By contrast, a third party insurance claim occurs when a person other than the insured sues the insurance company, usually because of an accident caused by the insured. *See Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653, 656 n.1 (M.D.N.C. 1995). This case involves a third party insurance claim.

In the first party context, courts have generally found that when a document is produced or used by an insurer to evaluate its insured's claim to arrive at a claims decision in the ordinary and regular course of business, it is not work product. *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991). The *Harper* court found a presumption that a document prepared before a final decision was reached on an insured's claim is not work product and the presumption must be rebutted through the insurer demonstrating by specific evidentiary proof of objective facts that a reasonable anticipation of litigation existed when the document was produced and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision. *Id.* at 663-64. In the first party context, the courts have also articulated a "dual purpose" rule that a document is not privileged if it was initially created with a dual purpose (i.e., for a litigation and for a non-litigation purpose) and the litigation purpose is not the primary purpose. *Stout v. Illinois Farmers Ins. Co.*, 852 F. Supp. 704, 706-07 (S.D. Ind. 1994).

In their response to the defendants' motion for a protective order and in their motion to compel, the plaintiffs cite *Stout* and *Harper*, as well as other cases appearing in the first party insurance context, in support of their position that the claims file is discoverable. *See, e.g.*, *Wisconsin Local Gov't Prop. Ins. Fund v. Lexington Ins. Co.*, No. 15-CV-142-JPS, 2017 WL 2804940 (E.D. Wis. June 28, 2017); *Nationwide Agribusiness Ins. Co. v. Meller Poultry Equip.*,

*Inc.*, No. 12-C-1227, 2013 WL 4647983 (E.D. Wis. Aug. 29, 2013); *Compton v. Allstate Prop. & Cas. Ins. Co.*, 278 F.R.D. 193 (S.D. Ind. 2011); *Airheart v. Chicago & N. W. Transp. Co.*, 128 F.R.D. 669 (D.S.D. 1989); *Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160 (D. Minn. 1986). However, in their reply in support of their motion to compel, the plaintiffs argue the first party/third party distinction is inapplicable here because no lawyer was involved in Pohlman's investigation.

As to the first party/third party insurance claim issue, I agree that whether the insurance claim is a first party or third party claim is relevant to the analysis. When an insurance company is investigating a first party claim, prior to the denial of the claim, it is logical to conclude that the claims file generated is made in the ordinary course of business and not in anticipation of litigation. Further, there is a contractual relationship between the insurer and its insured and the insurer is duty bound to adjust its insured's claim in good faith. Whereas in the third party context, there is immediately an adversarial relationship between the insurer and the third party claimant, without the same contractual obligations. Some courts have fashioned a bright line rule that files generated during the investigation of third party claims are made in anticipation of litigation and are not discoverable. *See, e.g.*, *Amy's Kitchen, Inc. v. Stukel Mountain Organics, LLC*, No. 16-CV-71, 2016 WL 9406695 (D. Or. Sept. 28, 2016); *Wietzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125 (D. Colo. 1993).

While I agree that the rebuttal presumption as articulated in *Harper* does not apply in this case because it is not a first party case, I also decline to adopt a bright-line rule that claims files in third party cases are not discoverable. I am persuaded by then District Judge Hamilton's analysis in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532 (S.D. Ind. 1999) regarding the evaluation of work product privilege in this context. Judge

9

Hamilton did not decide whether the distinction between first and third party claims is decisive in evaluating claims of work product protection; rather, he found that it is one factor in the analysis. *Id.* at 536.

The plaintiffs argue that the defendants fail to assert in their motion and supporting documents that the claims file contains legal strategies or opinions regarding potential litigation. This is simply incorrect. The defendants assert that Pohlman's investigative summary reports provided his opinions on potential liability issues and available defenses. (Docket # 32 at 7.) Conlin avers that it is not common practice or routine business for Statewide Services to retain Pohlman, a claims adjustor, for every matter. (Conlin Aff. ¶ 7.) Rather, he is only retained when there is a high likelihood that litigation will be commenced against the policyholder. (*Id.*) Conlin states that after he was informed of Swannie Her's death, Pohlman was retained to investigate the incident in anticipation of litigation so that Statewide Services could evaluate its potential for liability and identify and preserve information in anticipation of litigation. (*Id.* ¶ 8.) Pohlman has similarly submitted an affidavit stating that when he was retained by Statewide Services on behalf of its policyholder, the City, he was informed, and it was his belief and understanding, that he was being retained in anticipation of litigation and because of the very high probability of litigation. (Affidavit of James A. Pohlman ("Pohlman Aff.") ¶¶ 5-6, Docket # 34.)

If the work product privilege "exists so that one party cannot gain an unfair advantage over another by learning the other party's counsel's strategies and legal theories," *Allendale Mut. Ins. Co.*, 152 F.R.D. at 135, it follows that Pohlman's First, Second, Third, Fourth, and Fifth Summary Reports of the investigation, which contains Pohlman's appraisal of the defendants' liability and potential defenses, is protected work product.

These documents were clearly created in anticipation of an articulable claim arising from Swannie Her's death that would very likely result in litigation.

I do not find, however, that the recorded conversations of the witnesses, the 48 photographs of the Regner Park Pond, the map showing measurements of the pond, the map showing the location of the lifeguards, Swannie Her's GoFundMe page (obtained online), and a letter dated June 16, 2016 to the West Bend P.D. requesting a copy of its report, are protected work product. Unlike Pohlman's reports containing his analysis of the defendants' potential liability and defenses, the other documents in the claims file appear to be investigative materials obtained in the ordinary course of the business of investigating a potential insurance claim. Thus, I will grant the plaintiffs' motion to compel as to these documents and deny the defendants' motion for a protective order as to these documents.

The plaintiffs also argue that should the court determine the documents were protected work product, they have established a substantial need for the requested discovery and are unable to obtain the information without undue hardship. While the work product privilege is not absolute and a party may discover protected work product if it can show that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means, Rule 26(b)(3)(A)(ii), I do not find the plaintiffs have shown a substantial need as to Pohlman's First, Second, Third, Fourth, and Fifth Summary Reports. In fact, the plaintiffs make no argument as to their need for these specific documents, focusing their argument instead on the recorded statements. (Pl.'s Resp. Br. at 10-13, Docket # 46.) Thus, the plaintiffs' motion to compel as to Pohlman's First, Second, Third, Fourth, and Fifth Summary Reports of the investigation is denied and the defendants' motion for a protective order is granted.

*2. Pohlman's Deposition*

Finally, the defendants seek to quash the notice of video deposition *duces tecum* of Pohlman. The defendants argue that Pohlman has no personal knowledge relating to any of the events at issue. Pohlman conducted an investigation of the incident soon after Swannie Her's death and obtained statements from witnesses. Given the broad scope of discovery, it is possible that Pohlman has information relevant to the plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). Thus, the defendants' motion to quash Pohlman's notice of video deposition *duces tecum* is denied and the plaintiffs' motion to compel Pohlman's deposition is granted. Pohlman, of course, is not ordered to produce documents or answer questions found to be protected work product, consistent with this decision and order.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for a protective order (Docket # 31) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to compel (Docket # 46) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the defendants produce the recorded conversations of the witnesses, the 48 photographs of the Regner Park Pond, the map showing measurements of the pond, the map showing the location of the lifeguards, Swannie Her's GoFundMe page (obtained online), and a letter dated June 16, 2016 to the West Bend P.D. requesting a copy of its report.

Dated at Milwaukee, Wisconsin this 25th day of July, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge