UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF SWANNIE HER, et al.,

    Plaintiffs,

v.

                                                Case No: 17-CV-1015

CRAIG SADNOWNIKOW, et al.,

    Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMMARY JUDGMENT**

1. On June 11, 2016, Connie Her went to the recreational swimming pond located at Regner Park to attend her two-year-old nephew's birthday party. (Reginato Aff., Ex. 1, 3/27/18 Deposition of Connie Her ("Connie Depo."), p. 30:12-25; 39:15-20.)

**RESPONSE:**     Not disputed for the purpose of defendant's motion for summary judgment.

2. Connie went to Regner Park pond to, among other things, "take [her] kids swimming with the birthday kids." (Reginato Aff., Ex. 1, Connie Depo., p. 30:12-25; 39:15-20.)

**RESPONSE:**     Not disputed for the purpose of defendant's motion for summary judgment.

3. The birthday party took place at a picnic area near the sand/grassy area adjacent to the pond. (Reginato Aff., Ex. 1, Connie Depo., p. 39:3-8, Ex. E, Map of Pond.)

**RESPONSE:**     Not disputed for the purpose of defendant's motion for summary judgment.

4. Connie initially brought six of her ten children with her to the pond on June 11, 2016: Ekin Her; Jasmine Her; Evangelin Her; Alexander Hernandez; Jhovanny Ramirez-Chang Jr.; and Jovanyel Ramirez-Chang. (Reginato Aff., Ex. 1, Connie Depo., pp. 37:10-17; 46:7-10.)

**RESPONSE:**     Not disputed for the purpose of defendant's motion for summary judgment.

5. Connie also brought her boyfriend/fiancé, Jhovanny Ramirez to the pond on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 37:10-17.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

6. At approximately 3:00 p.m. on June 11, 2016, Connie, Jhovanny, Jhovanny Jr. and Jovanyel left Regner Park to go pick-up six-year-old Swannie Her, Thavon Her, and Chuxeng Her, Connie's three other children who lived with their father, Chong Her, at the time. (Reginato Aff., Ex. 1, Connie Depo., pp. 45:16-21; 46:1-6.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

7. Prior to June 11, 2016, Chong had agreed to allow Swannie, Thavon and Chuxeng to go live with Connie for the summer and arranged a meeting in Oshkosh to exchange custody of those children. (Reginato Aff., Ex. 1, Connie Depo., p. 48:3-14.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

8. Connie informed Chong that "the kids were going to the birthday party" and that "there was a swimming pond at the park that [they] were going to go to." (Reginato Aff., Ex. 1, Connie Depo., p. 49:8-16.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

9. After exchanging custody on June 11, 2016, Connie, Jhovanny, Jhovanny Jr., Jovanyel, Swannie, Thavon and Chuxeng drove back to Regner Park and arrived at approximately 5:00 p.m. (Reginato Aff., Ex. 2, 3/27/18 Deposition of Jhovanny Ramirez ("Jhovanny Depo."), p. 36:5-11.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

10. During their deposition, Connie and Jhovanny testified that Swannie was in their custody after they met with Chong. (Reginato Aff., Ex. 1, Connie Depo., pp. 48:91-14; 51:15- 17); (Reginato Aff., Ex. 2, Jhovanny Depo., p. 34:9-22.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

11. During their deposition, Connie and Jhovanny both testified that Swannie's safety was their responsibility on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 51:15-20); (Reginato Aff., Ex. 2, Jhovanny Depo., p. 11:13-22.)

**RESPONSE:** Disputed. Connie Her testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that she understood

the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Depo. pp. 70:20; 74:1-22; 76:21-77:1.)

12. After they arrived back at Regner Park on June 11, 2016, Connie, Jhovanny, Jhovanny Jr., Jovanyel, Swannie, Thavon and Chuxeng went to the area where the birthday party was organized to greet family and friends. (Reginato Aff., Ex. 1, Connie Depo., pp. 58:14-25; 59:1-10.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

13. Shortly after greeting family/friends, Swannie put her swimsuit on and obtained Connie's permission to go in the pond with her siblings. (Reginato Aff., Ex. 1, Connie Depo., pp. 60:3-15; 61:15-20.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

14. Connie did not accompany Swannie to the pond on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., pp. 77:25; 78:1-3.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment. However, Connie testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that she understood the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Depo. pp. 70:20; 74:1-22; 76:21-77:1.)

15. Connie did not enter the water with Swannie on June 11, 2016. (Reginato Aff, Ex. 1, Connie Depo., pp. 77:25; 78:1-3.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment. However, Connie testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that she understood the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Depo. pp. 70:20; 74:1-22; 76:21-77:1.)

16. Connie did not stand near the edge of the pond to monitor Swannie on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., pp. 77:25; 78:1-3.)

**RESPONSE:** Disputed. Connie did not believe standing near the edge of the pond was necessary as she watched Swannie enter the pond and believed the lifeguards near her would do the same. (Lang Aff., Ex. 1, Connie Depo., pp. 63: 1-11; 70:6-20; 74: 9-22; 77:21-25.)

3

17. Connie did not ask any adult from the birthday party to watch Swannie while she was in the pond on June 11, 2016. (Reginato Aff., Ex. 1., Connie Depo., pp. 62:25; 63:1-3; 74:9- 12).

**RESPONSE:** Disputed. Connie watched Swannie enter the pond and believed the lifeguards near her would do the same. (Lang Aff., Ex. 1, Connie Depo., pp. 63: 1-11; 70:6-20; 74: 9-22; 77:21-25.)

18. Connie did not tell Swannie to check-in with her at a certain time on June 11, 2016 before, or after, Swannie entered the pond. (Reginato Aff., Ex. 1, Connie Depo., pp. 63:25; 64:1-14.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

19. Connie did not tell Swannie to check-in with any other adult at a certain time on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., pp. 63:25; 64:1-2, 11-14.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

20. Connie did not explain the "Beach Rules" governing the use of the pond to Swannie on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 65:2-5.)

**RESPONSE:** Disputed. The only rule that Connie was made aware of was that everyone needed a band to enter the pond. Connie and her uncle chipped in and made sure that they had enough money to buy each child a band. (Lang Aff. Ex. 1, Connie Depo. p. 46:17-25.)

21. During her deposition, Connie testified that she did not "plan[] on supervising Swannie while she was in the pond" on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 70:1-6.)

**RESPONSE:** Disputed. Connie did not believe supervision was necessary as she watched Swannie enter the pond and believed the lifeguards near her would watch Swannie when she was in the water, that there were lifeguards present and that she understood the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff., Ex. 1, Connie Depo., pp. 63: 1-11; 70:6-20; 74: 1-22; 76:21-77:1; 77:21-25.)

22. Connie did not tell Swannie to check-in with any of the lifeguards who were on duty at the pond on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 64:5-8.)

**RESPONSE:** Disputed. Connie was not made aware of any rule that Swannie was to check in with any lifeguard on duty before entering the water. No rule is stated in the West Bend Park, Recreation and Forestry Department's Regner Park Beach Rules, in the Aquatic Manual & Emergency Response Plan. No lifeguard, lifeguard supervisor or anyone else referenced any rule in their depositions. Additionally, when Swannie was in the water, there were lifeguards

present, so Connie thought Swannie would be okay. (Lang Aff. Ex. 1, Connie Depo. p. 46:17-25; Lang Aff. Ex. 3, Zochart Depo., pp. 30-40.)

23. Connie did not inform any of the lifeguards who were on-duty at the pond on June 11, 2016 that Swannie was entering the pond. (Lang Aff. Ex. 1, Connie Depo., pp. 65:21- 25; 66:1.)

**RESPONSE:** Disputed. Connie was not made aware of any rule that Swannie was to check in with any lifeguard on duty before entering the water. No rule is stated in the West Bend Park, Recreation and Forestry Department's Regner Park Beach Rules, in the Aquatic Manual & Emergency Response Plan. No lifeguard, lifeguard supervisor or anyone else referenced any rule in their depositions. Additionally, when Swannie was in the water, there were lifeguards present, so Connie thought Swannie would be okay. (Lang Aff. Ex. 1, Connie Depo. p, 46:17-25; Lang Aff. Ex. 3, Zochart Depo. Ex., p. 30-40.)

24. Connie did not tell any of the lifeguards who were on-duty at the pond on June 11, 2016 who Swannie was, how old Swannie was, or whether Swannie was able to swim. (Reginato Aff., Ex. 1, Connie Depo., pp. 65:21-25; 66:1.)

**RESPONSE:** Disputed. No one relied upon parents telling lifeguards how well small children could swim. No one was allowed in water up to their armpits unless they had a special wristband that designated the person had passed a swim test. If a lifeguard saw a small child in water up to their waist without a parent within arm's reach, it was mandatory for the lifeguard to alert the head lifeguard or one of the down lifeguards to go get the child. No one has stated either that Swannie had a swim test wrist band or that she had attempted to take the swim test. (Lang Aff. Ex. 6, Zamzow Depo., pp. 77:18-79:5; 101:8-14; Lang Aff. Ex. 4, Ehmke Depo., p. 29:8-19.) Swannie did not have swimming bracelet on indicating she passed the swim test. (Lang Aff. Ex. 7, Millard Depo. p. 37: 2-10)

25. During her deposition, Connie testified that she believed Swannie "was a good swimmer" on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 29:16-19.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

26. During her deposition, Connie testified that before Swannie entered the pond on June 11, 2016, she told Swannie and her other children to "use the buddy system," and that she felt confident in the use of the "buddy system." (Reginato Aff., Ex. 1, Connie Depo., pp. 77:25; 78:1-3); (Reginato Aff., Ex. 4, 4/17/18 Deposition of Thavon Her ("Thavon Depo."), p. 26:14- 18.)

**RESPONSE:** Disputed. Connie Her testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Dep. p. 70:20; 74:1-22; 76:21-77:1.)

5

27. During her deposition, Connie testified that her children used the "buddy system" to watch-over one another on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., pp. 67:21-25; 68:1-6.)

**RESPONSE:** Disputed. Connie Her testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that she understood the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Dep. p. 70:20; 74:1-22; 76:21-77:1.)

28. During her deposition, Connie testified that Thavon and Evangelin were Swannie's "buddies" on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., pp. 67:21-25; 68:1- 6.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

29. During her deposition, Connie testified that it was her understanding that "Thavon and Evangelin were responsible for making sure that Swannie was safe while she was in the water" pursuant to the "buddy system" on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., pp. 67:21 25; 68:1-6.)

**RESPONSE:** Disputed. Connie Her testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that she understood the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Dep. p. 70:20; 74:1-22; 76:21-77:1.)

30. During her deposition, Thavon testified that Connie's children did not use the "buddy system" on June 11, 2016, and that the children were just "supposed to stick together" and "watch each other" while in the pond on June 11, 2016. (Reginato Aff., Ex. 4, Thavon Depo. pp. 19:18-25, 20:1-15); (Reginato Aff., Ex. 5, 4/17/18 Deposition of Ekin Her ("Ekin Depo"), p. 14:6-10) ("She [Connie] said, I'm busy watching both of the boys [i.e., Jhovanny Jr. and Jovanyel], because they are loud and they – someone needs to watch them. So then she said, if you guys are going to go swimming, keep an eye on each other and stay with each other as a group.").

**RESPONSE:** Disputed. Connie Her testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that she understood the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Dep. p. 70:20; 74:1-22; 76:21-77:1.)

31. While Swannie was in the pond on June 11, 2016, Connie and Jhovanny remained in the area where the birthday party was organized in order to "calm down" Jhovanny Jr. and Jovanyel who

were "getting antsy" and "hungry," and who needed their diapers changed. (Reginato Aff., Ex. 2, Jhovanny Depo., pp. 40:19-21; 47:16-22); (Reginato Aff., Ex. 1, Connie Depo., p. 71:19-22.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

32. While Swannie was in the pond on June 11, 2016, Connie and Jhovanny remained in the area where the birthday party was organized and socialized with "[Connie's] cousins that were there." (Reginato Aff., Ex. 1, Connie Depo., p. 82:5-14.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

33. During her deposition, Connie testified that she was "partly" supervising Swannie (along with all of her other children) after Swannie entered the pond on June 11, 2016 by looking "over [her] shoulder" at the pond "every few minutes." (Reginato Aff., Ex. 1, Connie Depo., p. 72:8-16.)

**RESPONSE:** Disputed. Connie Her testified that she expected the lifeguards to watch Swannie when she was in the water, that there were lifeguards present and that she understood the purpose of lifeguards is to watch over everybody who is swimming. When Connie saw Swannie go into the water, Swannie was right by a lifeguard, so she thought it would be okay. (Lang Aff. Ex. 1, Connie Dep. p. 70:20; 74:1-22; 76:21-77:1.)

34. During her deposition, Connie admitted that she told the West Bend Police Department detectives who interviewed her shortly after the June 11, 2016 incident that she was not supervising Swannie while she was in the pond, and that she was being truthful with detectives at the time. (Reginato Aff., Ex. 1, Connie Depo., p. 83:18-25.) ("Q. Do you recall telling Detective McAndrews that none of the kids were being supervised, because of the buddy system? A. I don't know. Yes, I think so. Yes."); (Reginato Aff., Ex. 1, Connie Depo., p. 35:1- 4.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

35. During his deposition, Jhovanny testified that he was not watching Swannie while she was in the pond on June 11, 2016. (Reginato Aff., Ex. 2, Jhovanny Depo., 50:15-21.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

36. Swannie's siblings testified that they entered the pond with Swannie, and that they were initially watching Swannie while the children were playing in the shallow end. (Reginato Aff, Ex. 4, Thavon Depo., pp. 26-27.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

7

37. At some point, Swannie told her siblings that she wanted to go swim/play with Ekin who was located in the deeper area of the pond. (Reginato Aff., Ex. 4, Thavon Depo., p. 29:8-11.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

38. Swannie's siblings warned Swannie that she should not go to the deeper area because Ekin would not be able to "watch you as well;" however, Swannie's siblings allowed Swannie to leave the shallow area and go into the deeper area of the pond. (Reginato Aff., Ex. 4, Thavon Depo., p. 29:12-18.)

**RESPONSE:** Disputed. Defendants and trained lifeguards of the pond did not stop or even see Swannie venture into the deep well and zone 2 despite being her small size, lack of swim test and failure to have an adult within arm's reach. (Lang Ex. 3, Zochert Depo., pp. 69: 14-14; 78:18-24; Lang Ex. 4, Ehmke Depo., p. 51:7-14; Lang Ex. 7, Millard Depo., pp. 25:3-6; 34:3-9.)

39. Shortly thereafter, Swannie's unresponsive body was discovered underneath the surface of the water by a bystander who was in the pond but not attending the birthday party. (Reginato Aff., Ex. 1, Connie Depo., pp. 82-83.)

**RESPONSE:** Disputed. Swannie left Thavon Her playing volleyball with her sister, Evangelin Her, who was 9 years old. They both swam halfway to Ekin before they got back out of the water. They then walked around and got back in the water toward Ekin. Swannie was not found by the patron of the park until she had been underwater for approximately ten minutes. (Lang Aff. Ex. 14, Thavon Depo. 29:16-23; Lang Aff. Ex. 3, Zochart Depo. 88:13-24.)

40. After the bystander discovered Swannie's body on June 11, 2016, he shouted for help, lifted Swannie's body above the water, carried her out of the pond, and placed her on the sand/beach area. (Reginato Aff., Ex. 6, 5/22/18 Deposition of Phueng Cha ("Cha Depo."), pp. 38:16-25; 39:1-13.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

41. Connie and Jhovanny did not observe or hear any signs of struggling or distress – either visual or audible – from Swannie while she was in the pond on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 88:7-13.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment. However, none of the lifeguards did their job to ensure Swannie's safety and failed to see Swannie at all until Abigail Ehmke saw the patron walking out of the water with Swannie Her in his arms after she had already drowned. (Lang Aff. Ex. 4, Ehmke Depo. 22:24-23:5; 51:25; Lang Aff. Ex. 1, 3, Zochart Depo. 15:18-25; 78:18-79:3; Lang Aff. Ex. 7, Millard Depo. 27:4-15; Lang Aff. Ex. 5, Kaphingst Depo. 16:17-20.)

42. Connie and Jhovanny did not see when, where, or how Swannie went underneath the surface of the water. (Reginato Aff., Ex. 1, Connie Depo., p. 88:14-16.)

**RESPONSE:** Not Disputed. Affirmatively state, that none of the lifeguards remember seeing Swannie Her at all until Abigail Ehmke saw the patron walking out of the water with Swannie Her in his arms after she had already drowned. (Lang Aff. Ex. 4, Ehmke Depo. 22:24-23:5; 51:25; Lang Aff. Ex. 3, Zochart Depo. 15:18-25; 78:18-79:3; Lang Aff. Ex. 7, Millard Depo. 27:4-15; Lang Aff. Ex. 5, Kaphingst Depo. 16:17-20.)

43. Connie and Jhovanny do not know what caused Swannie to go underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 88:14-16.)

**RESPONSE:** Not Disputed. Affirmatively state Swannie Her was found a few feet from the most dangerous area of the pond, the "deep well". (Zochart Dep. 102:15-24.) None of the lifeguards remember seeing Swannie Her at all until Abigail Ehmke saw the patron walking out of the water with Swannie Her in his arms after she had already drowned. (Lang Aff. Ex. 4, Ehmke Depo. 22:24-23:5; 51:25; Lang Aff. Ex. 3, Zochart Depo. 15:18-25; 78:18-79:3; Lang Aff. Ex. 17, Millard Depo. 27:4-15; Lang Aff. Ex. 5, Kaphingst Depo. 16:17-20.)

44. No one else – including Connie's other children, anyone else who was attending the birthday party, or any individuals who were in/around the pond – observed or hear any signs of struggling or distress from Swannie while she was in the pond on June 11, 2016. (Reginato Aff., Ex. 7, 3/27/18 Evangelin Depo., pp. 35:3-5; 42-43); (Reginato Aff., Ex. 4, Thavon Depo., pp. 33:4-7; 34:24-25; 35:1-2); (Reginato Aff., Ex. 5, Ekin Depo., p. 17); (Reginato Aff., Ex. 8, 4/17/18 Deposition of Jasmine Her ("Jasmine Depo."), pp. 14-15.)

**RESPONSE:** Disputed. The lifeguards had a mandatory duty to ensure the safety of Swannie and other patrons and to cover all areas of the beach adequately through constant scanning. (Lang Aff. Ex. 3, Zochart Depo. 85:19-23.) They had a mandatory duty to maintain constant surveillance to ensure the safety of all patrons. (Zochart Depo. 87:13-88:7.) They had a mandatory duty to watch small children to ensure they are within arm's reach of a parent and not in water over their waists. Enforcing these rules is mandatory to ensure children's safety. (Zochart Depo. 92:14-16; 93:12; 97:12-18; 98:12-13; Lang Aff. Ex. 5, Kaphingst Depo. 28:1-29:2.) Swannie Her was found a few feet from the most dangerous area of the pond, the "deep well". (Zochart Depo. 102:15-24.) None of the lifeguards remember seeing Swannie Her at all until Abigail Ehmke saw the patron walking out of the water with Swannie Her in his arms after she had already drowned. (Lang Aff. Ex. 4, Ehmke Depo. 22:24-23:5; 51:25; Zochart Depo. 15:18-25; 78:18-79:3; Lang Aff. Ex. 7, Millard Depo. 27:4-15; Lang Aff. Ex. 5, Kaphingst Depo. 16:17-20.)

45. No one else – including Connie's other children, anyone else who was attending the birthday party, or any individuals who were in/around the pond – saw when, where, or how Swannie went underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 7, Evangelin Depo., pp. 35:3-5; 42-43); (Reginato Aff., Ex. 4, Thavon Depo., pp. 33:4-7; 34:24-25; 35:1-2); (Reginato Aff., Ex. 5, Ekin Depo., p. 17); (Reginato Aff., Ex. 8, Jasmine Depo., pp. 14- 15.)

**RESPONSE:** Disputed. The lifeguards on duty had a mandatory duty to ensure they covered all areas of the beach adequately. (Lang Aff. Ex. 3, Zochart Depo. 85:19-23.) They had a mandatory duty to maintain constant surveillance to ensure the safety of all patrons. (Zochart Depo. 87:13-88:7.) They had a mandatory duty to watch small children to ensure they are within arm's reach of a parent and not in water over their waists. Enforcing these rules is mandatory to ensure children's safety. (Zochart Depo. 92:14-16; 93:12; 97:12-18; 98:12-13; Kaphingst Depo. 28:1-29:2.) Swannie Her was found a few feet from the most dangerous area of the pond. (Zochart Depo. 102:15-24.) None of the lifeguards remember seeing Swannie Her at all until Abigail Ehmke saw the patron walking out of the water with Swannie Her in his arms after she had already drowned. (Lang Aff. Ex. 4, Ehmke Depo. 22:24-23:5; 51:25; Lang Aff. Ex. 3, Zochart Depo. 15:18-25; 78:18-79:3; Lang Aff. Ex. 71, Millard Depo. 27:4-15; Lang Aff. Ex. 5, Kaphingst Depo. 16:17-20.)

46. Phueng Cha testified that she did not see Swannie in the pond on June 11, 2016, despite the fact that Phueng Cha had been scanning the precise area of the pond where Swannie's unresponsive body was discovered for twenty minutes prior to that point in time. (Reginato Aff., Ex. 6, Cha Depo., pp. 38:16-25; 41:25; 42:1-18; 43:17-20; 44:1-4.)

**RESPONSE:** Not Disputed as it accurately reflects testimony. However, the lifeguards had a mandatory duty to ensure they covered all areas of the beach adequately. (Lang Aff. Ex. 3, Zochart Depo. p. 85:19-23.) They had a mandatory duty to maintain constant surveillance to ensure the safety of all patrons. (Zochart Depo. p. 87:13-88:7.) They had a mandatory duty to watch small children to ensure they are within arm's reach of a parent and not in water over their waists. Enforcing these rules is mandatory to ensure children's safety. (Zochart Depo. 92:14-16; 93:12; 97:12-18; 98:12-13; Kaphingst Depo., p. 28:1-29:2.) Swannie Her was found a few feet from the most dangerous area of the pond. (Zochart Depo. 102:15-24.) None of the lifeguards remember seeing Swannie Her at all until Abigail Ehmke saw the patron walking out of the water with Swannie Her in his arms after she had already drowned. (Lang Aff. Ex. 4, Ehmke Depo. pp. 22:24-23:5; 51:25; Lang Aff. Ex. 3, Zochart Depo. pp. 15:18-25; 78:18-79:3; Lang Aff. Ex. 7, Millard Depo. p. 27:4-15; Lang Aff. Ex. 5, Kaphingst Depo. p. 16:17-20.)

47. On June 11, 2016, the pond was divided into three separate but overlapping areas or "zones." (i.e., Zone 1 and Zone 2 overlap, and Zone 2 and Zone 3 overlap). (Reginato Aff., Ex. 9, 1/19/18 Deposition of Abigail Ehmke ("Ehmke Depo."), pp. 42:22-25; 43:1-21.); (Reginato Aff., Ex. 10, 1/18/18 Deposition of Michaela Millard ("Millard Depo."), pp. 13-14.).

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

48. *Zone 1*, the "head section," was located on the west-end of the pond and the water reached up to approximately five-feet in depth. (Reginato Aff., Ex. 11, 1/17/18 Deposition of Brogan Zochert ("Zochert Depo."), pp. 36-37); (Reginato Aff., Ex. 10, Millard Depo., pp. 13- 14.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

49. ***Zone 2***, the "raft section," was located in the middle of the pond and the water reached up to approximately 15-feet in depth. (Reginato Aff., Ex. 11, Zochert Depo., pp. 37, 55); (Reginato Aff., Ex. 10, Millard Depo., pp. 13-14.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment. Affirmatively state that Zone 2 is also known as the "deep well." (Lang Aff. Ex. 13, Wittenbel Depo., pp. 21:13 – 22:13.)

50. Patrons were required to pass a "swim test" with a lifeguard and obtain a "swimming wristband" before entering Zone 2 on June 11, 2016. (Reginato Aff., Ex. 11, Zochert Depo., p. 69:4-6.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment. However, affirmatively allege neither Connie nor Swannie were informed of this rule at any point in time before Swannie died.

51. ***Zone 3***, the "kids section," was located on the east-end of the pond and the water reached up to approximately 3 feet in depth. (Reginato Aff., Ex. 11, Zochert Depo., p. 37); (Reginato Aff., Ex. 10, Millard Depo., pp. 13-14.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

52. There were seven lifeguards on-duty and approximately 150-200 people in and around the pond when Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 11, Zochert Depo., pp. 27:24-25; 28:1-5); (Reginato Aff., Ex. 10, Millard Depo., p. 41:7-9); (Reginato Aff., Ex. 12, 1/17/18 Deposition of Madeline Kaphingst ("Kaphingst Depo."), p. 42:7-9.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

53. The lifeguards rotated zones/positions every 20 minutes on June 11, 2016. (Reginato Aff., Ex. 11, Zochert Depo., pp. 27:24-25; 28:1-5); (Reginato Aff., Ex. 10, Millard Depo., p. 41:7-9); (Reginato Aff., Ex. 12, Kaphingst Depo., p. 42:7-9.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

54. Madeline Kaphingst, a lifeguard, was positioned at the lifeguard stand located in the "head section" (west-end) of the pond and scanning Zone 1 approximately five minutes before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 12, Kaphingst Depo., pp. 22:3-4; 43:15-21.)

**RESPONSE:** Disputed. Madeline was dealing with intoxicated adult patrons who refused to take a swim test. She called Ryan Zamzow, the head lifeguard on the radio to help Abby, who was dealing with the intoxicated patrons. (Lang Aff. Ex. 5, Kaphingst Depo. p. 22:2-8.) Scanning must be done of an entire zone in a period of seconds because an actively drowning person can submerge within seconds. (Lang Aff. Ex. 3, Zochert Depo., p. 39.) She could not have been adequately scanning and dealing with the non-compliant intoxicated adult male patrons.

55. Brogan Zochert, a lifeguard, was positioned at the lifeguard stand located in the "raft section" (middle) of the pond and scanning Zone 2 approximately five minutes before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 11, Zochert Depo., pp. 43:23-25; 44:1-4.)

**RESPONSE:** Disputed. If Zochert was scanning as the training required, there is no reason she would have failed to identify a small child without a swim test wrist band in water over her waist without an adult within arm's length. (Lang Aff. Ex. 2, Manuel, p. 21.)

56. Cassidy Holbrook, a head lifeguard, was positioned at the lifeguard stand located in the "kids section" (east-end) of the pond scanning Zone 3 approximately five minutes before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 11, Zochert Depo., p. 62); (Reginato Aff., Ex. 13, 1/18/18 Deposition of Ryan Zamzow ("Zamzow Depo."), p. 31.)

**RESPONSE:** Disputed. If Holbrook was scanning as the training required, there is no reason she would have failed to identify a small child without a swim test wrist band in water over her waist without an adult within arm's length. (Lang Aff. Ex. 2, Manuel, p. 21.)

57. Abigail Ehmke, a lifeguard, was positioned on land at the beach area on the west end of the pond and was conducting swim tests while also scanning the water approximately five minutes before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 9, Ehmke Depo., pp. 36:11-14; 42:7-14.)

**RESPONSE:** Disputed. Scanning must be done of an entire zone in a period of seconds because an actively drowning person can submerge within seconds. (Lang Aff. Ex. 3, Zochert Depo., p. 39.) Ehmke's primary focus was on the intoxicated patrons who were giving her a hard time since the time she started her rotation at the swim testing area, and she could not have been able to effectively scan any portion of the water. (Lang Aff. Ex. 4, Ehmke Depo. pp. 36:18-37:19.)

58. Ryan Zamzow, a head lifeguard, was standing on land at the beach area near the head section of the pond and, among other things, was scanning the water approximately five minutes before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 13, 1/18/18 Zamzow Depo., p. 102:21-25.)

**RESPONSE:** Disputed. Scanning must be done of an entire zone in a period of seconds because an actively drowning person can submerge within seconds. (Lang Aff. Ex. 3, Zochert

12

Depo., p. 39.) Zamzow's primary focus was on Abigail Ehmke and the intoxicated patrons, and he could not have been able to effectively scan any portion of the water. (Lang Aff. Ex. 6, Zamzow Depo. 118:7-9.) If Zamzow was scanning as the training required, there is no reason he would have failed to identify a small child without a swim test wrist band in water over her waist without an adult within arm's length. (Lang Aff. Ex. 2, Manuel, p. 21.)

59. Noah Wilkens, a lifeguard, was positioned inside of the beach house and was monitoring for, and prepared to respond to, any emergency calls approximately five minutes before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 14, 1/19/18 Deposition of Noah Wilkens ("Wilkens Depo."), p. 7:13-16.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

60. Michaela Millard, a lifeguard, was positioned inside of the beach house and was monitoring for, and prepared to respond to, any emergency calls approximately five minutes before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 10, Millard Depo., p. 19:8-13.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

61. The lifeguards were positioned at their designated sections before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 12, Kaphingst Depo., pp. 21:24-25; 22:1-4); (Reginato Aff., Ex. 11, Zochart Depo., pp. 48:11-19; 88:8-12); (Reginato Aff., Ex. 6, Cha Depo., p. 50-51.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

62. The lifeguards were scanning their respective zones before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 12, Kaphingst Depo., pp. 21:24-25; 22:1-4); (Reginato Aff., Ex. 11, Zochart Depo., pp. 48:11-19; 88:8-12); (Reginato Aff., Ex. 6, Cha Depo., p. 50-51.)

**RESPONSE:** Disputed. The lifeguards were never trained on how to scan the water. (Lang Aff. Ex. 3, Zochart Depo. pp. 53:21-54:3.) Scanning must be done of an entire zone in a period of seconds because an actively drowning person can submerge within seconds. (Lang Aff. Ex. 3, Zochert Depo., p. 39.) Also, if the lifeguards were scanning as the training required, there is no reason they would have failed to identify a small child without a swim test wrist band in water over her waist without an adult within arms length. (Lang Aff. Ex. 2, Manual, p. 21; Lang Aff. Ex. 21 Lifeguard Training, p. 24.)

63. The lifeguards were maintaining constant surveillance of the water before Swannie's body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 12,

13

Kaphingst Depo., pp. 21:24-25; 22:1-4); (Reginato Aff., Ex. 11, Zochart Depo., pp. 48:11-19; 88:8-12); (Reginato Aff., Ex. 6, Cha Depo., p. 50-51.)

**RESPONSE:** Disputed. The lifeguards were never trained on how to scan the water. (Zochart Depo. 53:21-54:3.) Also, if the lifeguards were scanning as the training required, there is no reason they would have failed to identify a small child without a swim test wrist band in water over her waist without an adult within arm's length. (Lang Aff. Ex. 2, Manuel, p. 21.)

64. Brogan Zochart testified that she "felt very adequately trained and very comfortable with scanning" on June 11, 2016. (Reginato Aff., Ex. 11, Zochart Depo., p. 103:1- 4.)

**RESPONSE:** Disputed. The lifeguards were never trained on how to scan the water. (Lang Aff. Ex. 3, Zochart Depo. pp., 53:21-54:3.)

65. Before Swannie's body was discovered underneath the surface of the water on June 11, 2016, one of the on-duty lifeguard spotted Ekin attempting to enter the deep area of the pond in Zone 2 without a swimming wristband, intercepted the attempt, and warned Ekin that he was required to pass a swim test with a lifeguard and obtain a swimming wristband in order to enter that area. (Reginato Aff., Ex. 5, Ekin Depo., p. 11:2-13.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

66. The lifeguards did not see Swannie enter the pond or detect Swannie go underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 12, Kaphingst Depo., pp. 15:13-16; 17:18-22; 22:2-4; 44:5-13) (Reginato Aff., Ex. 11, Zochart Depo., pp. 48:11-19; 111:1-5); (Reginato Aff., Ex. 9, Ehmke Depo., pp. 30:21-24; 51:9-25.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

67. The lifeguards did not hear or observe any disturbances in the water, or any signs of struggling or distress from Swannie (or anyone else) prior to and/or leading-up to the moment her body was discovered underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 12, Kaphingst Depo., pp. 15:13-16; 17:18-22; 22:2-4; 44:5-13) (Reginato Aff., Ex. 11, Zochart Depo., pp. 48:11-19; 111:1-5); (Reginato Aff., Ex. 9, Ehmke Depo., pp. 30:21-24; 51:9-25.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

68. Although Swannie's unresponsive body was discovered somewhere in Zone 2, it is unknown where in the pond Swannie went underneath the surface of the water on June 11, 2016. (Reginato Aff., Ex. 11, Zochart Depo., p. 49:14-19); (Reginato Aff., Ex. 1, Connie Depo., p. 88:14-16); (Reginato Aff., Ex. 7, Evangelin Depo., pp. 35:3-5; 42-43); (Reginato Aff., Ex. 4, Thavon Depo.,

pp. 33:4-7; 34:24-25; 35:1-2); (Reginato Aff., Ex. 5, Ekin Depo., p. 17); (Reginato Aff., Ex. 8, Jasmine Depo., pp. 14-15.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

69. The time when Swannie went underneath the surface of the water on June 11, 2016 is unknown. (Reginato Aff., Ex. 11, Zochart Depo., p. 49:14-19); (Reginato Aff., Ex. 1, Connie Depo., p. 88:14-16); (Reginato Aff., Ex. 7, Evangelin Depo., pp. 35:3-5; 42-43); (Reginato Aff., Ex. 4, Thavon Depo., pp. 33:4-7; 34:24-25; 35:1-2); (Reginato Aff., Ex. 5, Ekin Depo., p. 17); (Reginato Aff., Ex. 8, Jasmine Depo., pp. 14-15.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

70. After Swannie's body was discovered underneath the surface of the water on June 11, 2016, the lifeguards sounded an alarm, cleared the pond of all swimmers, initiated rescue efforts, and called 9-1-1. (Reginato Aff., Ex. 9, Ehmke Depo., p. 71:4-10); (Reginato Aff., Ex. 6, Cha Depo., pp. 53:1-10; 54:5-16.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

71. Emergency responders arrived at Regner Park soon thereafter, continued rescue efforts, and then transported Swannie to the hospital where she passed away a few days later. (Reginato Aff., Ex. 1, Connie Depo., pp. 85:6-25; 86:1-15; 87:20-23); (Reginato Aff., Ex. 6, Cha Depo., pp. 55:18-25; 56:1-17.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

72. Regner Park was owned and operated by the City of West Bend on June 11, 2016. (Reginato Aff., Ex. 3, 3/6/18 Deposition of Craig Hoeppner ("Hoeppner Depo."), p. 9:1-12.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

73. The City of West Bend did not derive (or attempt to derive) any profits from its operation of Regner Park or from the pond on/prior to June 11, 2016. (Hoeppner Aff., ¶ 6.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

74. Over the past 80+ years of operation, there have been no prior drowning incidents at the pond. (Reginato Aff., Ex. 3, Hoeppner Depo., p. 40:5-10.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

75. The lifeguards who were on-duty on June 11, 2016 had all been certified by the American Red Cross or YMCA. (Reginato Aff., Ex. 12, Kaphingst Depo., p. 5:5-9) (Reginato Aff., Ex. 11, Zochart Depo., pp. 6:1-11; 75:13-17); (Reginato Aff., Ex. 9, Ehmke Depo., p. 5:1- 20); (Reginato Aff., Ex. 14, Wilkens Depo., p. 6:3-5); (Reginato Aff., Ex. 15, 3/5/18 Deposition of Mykalene Bordeau ("Bordeau Depo."), p. 6:19-25); (Reginato Aff., Ex. 10, Millard Depo., pp. 11-18.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

76. The lifeguards who were on-duty on June 11, 2016 were required to complete a week-long orientation and training program provided by the City of West Bend before the pond opened for the 2016 season. (Reginato Aff., Ex. 9, Ehmke Depo., p. 5:1-20); (Reginato Aff., Ex. 15, Bordeau Depo., p. 20:1-9); (Reginato Aff., Ex. 10, Millard Depo., pp. 5-11.)

**RESPONSE:** Disputed. Mykalene Bordeau performed the training on the Regner Park rules and regulations. Ms. Bordeau had no experience as a lifeguard, and she had no experience at Regner Park pond. No one trained Ms. Bordeau on how to train lifeguards on the Regner Park rules. Ms. Bordeau did not teach the lifeguards any differences between lifeguarding in a pool versus lifeguarding at Regner Park pond. All lifeguard training during this week-long orientation was performed in a pool. For approximately two days prior to Regner Park opening, the lifeguards would practice searching for drowning victims in the Regner Park pond. (Lang Aff. Ex. 9, Bordeau Depo. pp. 8:19-23; 10:10-18; 11:1-18; 12:12-14; 13:23-16:23; Lang Aff. Ex. 4, Ehmke Depo. p. 5:11-17; Lang Aff. Ex. 7, Millard Depo. pp. 7:16-8:13.)

77. The lifeguards who were on-duty on June 11, 2016 were required to complete ongoing weekly training throughout the course of the 2016 season. (Reginato Aff., Ex. 9, Ehmke Depo., p. 5:1-20); (Reginato Aff., Ex. 15, Bordeau Depo., p. 20:1-9); (Reginato Aff., Ex. 10, Millard Depo., pp. 5-11.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

78. The lifeguards who were on-duty on June 11, 2016 received training on the following: use of AED; administering CPR; proper scanning, observation and zone coverage; identifying distressed and actively drowning patrons; emergency rescue scenarios and lifeguarding drills; underwater searches; executing emergency action plans; and observing for individuals with/without wristbands. (Reginato Aff., Ex. 12, Kaphingst Depo., pp. 5:5-9; 11:7- 18; 20-21) (Reginato Aff., Ex. 11, Zochart Depo., pp. 7; 54:15-24; 61:2-18; 63:16-24; 77:13-21; 78:5-9 ); (Reginato Aff., Ex. 9, Ehmke Depo., pp. 5; 33:2-4; 35; 58:19-22; 65:9-12); (Reginato Aff., Ex. 15, Bordeau Depo., pp. 20:2-9; 23:1-3; 27:11-19; 28:1-5); (Reginato Aff., Ex. 10, Millard Depo., pp. 5-11; 14:18-20); (Reginato Aff., Ex. 13, Zamzow Depo., pp. 8:14-22; 86:4-6.)

16

**RESPONSE:** Disputed. The lifeguards were never trained on how to scan the water. (Lang Aff. Ex. 13, Zochart Depo. p. 53:21-54:3.)

79. The lifeguards who were on-duty on June 11, 2016 were required to pass written examinations and "shadow" a head lifeguard for a minimum of twelve hours. (Reginato Aff., Ex. 11, Zochart Depo., pp. 8:15-21; 60:23-25.) 80. The lifeguards who were on-duty on June 11, 2016 were provided with, and trained on, the City of West Bend Aquatic Manual & Emergency Response Plan. (Reginato Aff., Ex. 12, Kaphingst Depo., pp. 5:5-9; 11:7-18; 20, 21) (Reginato Aff., Ex. 11, Zochart Depo., pp. 7; 54:15-24; 61:2-18; 63:16-24; 77:13-21; 78:5-9 ); (Reginato Aff., Ex. 9, Ehmke Depo., pp. 5; 33:2-4; 35; 58:19-22; 65:9-12); (Reginato Aff., Ex. 15, Bordeau Depo., pp. 20:2-9; 23:1-3; 27:11-19; 28:1-5); (Reginato Aff., Ex. 10, Millard Depo., pp. 5-11; 14:18-20); (Reginato Aff., Ex. 13, Zamzow Depo., pp. 8:14-22; 86:4-6.)

**RESPONSE:** Disputed. Mykalene Bordeau was the Recreational Supervisor for the City of West Bend in 2016, there was no background check done into whether she had any experience or background in supervising an aquatic facility, or whether she had been a lifeguard before or whether she had any Red Cross Lifeguarding Certification. Mykalene Bordeau did not have any lifeguarding certification or experience when she was hired as the Recreational Supervisor for the City of West Bend. Mykalene Bordeau ran through a power point presentation on the duties of lifeguards at Regner Park pond as part of their training, and she received no training on the power point presentation prior to giving the training presentation to the lifeguards, including the Emergency Action Plan. Mykalene Bordeau had no knowledge of the hidden dangers, including the "deep well" in Regner Park pond that were referenced on page 7 of the Emergency Action Plan. (Lang Aff. Ex. 12, Bordeau Depo., pp. 13:23-16:23; 17:9-11; 21:1-22:1; 23:8-10.) (Lang Aff. Ex. 8, Hoeppner Depo., p. 8:19-23.)

81. The City of West Bend Aquatic Manual & Emergency Response Plan specifies that it includes "guidelines, policies and procedures" applicable to Regner Park pond. (Reginato Aff., Ex. 16, 2016 Aquatic Manual.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

82. The City of West Bend Aquatic Manual & Emergency Response Plan indicates that it is a "tool" that "provides a method of preparing for, preventing and responding to aquatic emergencies." (Reginato Aff., Ex. 16, 2016 Aquatic Manual, p. 2.)

**RESPONSE:** Disputed. The City of West Bend Aquatic Manual & Emergency Response Plan contains the Lifeguarding Duties & Principles, which includes mandatory rules: 1) Be attentive at all times!; 2) Focus on and promote accident prevention! – a) enforce all beach rules . . . f) Observe and monitor the extremes – the highly active and over confident swimmer, and the highly passive and unskilled swimmer, as well as the high risk patrons, such as the elderly, intoxicated, obese, and swimmers with young children. g) It can't be emphasized enough to watch small children. At times, parents can neglect their children. The training PowerPoint presentation on the Lifeguard Duties and Principles contains the instruction **"WATCH SMALL CHILDREN!!!"** (Lang Aff. Ex. 3, Zochart Depo., pp. 24, 37; Lang Aff. Ex. 2 Manuel, p. 21.)

17

The lifeguards agreed these duties are mandatory duties. (Lang Aff. Ex. 3, Zochart Depo. pp. 23-24:11-4; 24-25: 22-3; 30:21-24; 74: 3-5; 75:2-12)

83. The City of West Bend Aquatic Manual & Emergency Response Plan indicates that lifeguards are required to demonstrate "reliability, emotional stability, tact, judgment, physical fitness and a positive attitude as you provide the safest environment possible."
(Reginato Aff., Ex. 16, 2016 Aquatic Manual, p. 2.)

**RESPONSE:** Not disputed, but affirmatively allege the City of West Bend Aquatic Manual also provides: a) "As a professional lifeguard, your primary responsibility is to protect the life and well being of each person using Regner Park Beach." (Lang Aff. Ex. 2 Manuel, p. 2.)

84. The lifeguards who were on-duty on June 11, 2016 were trained to use their judgment and discretion when implementing the duties and objectives discussed in the City of West Bend Aquatic Manual & Emergency Response Plan. (Reginato Aff., Ex. 13, Zamzow Depo., pp. 13:4-6; 14:16-18; 62:11-24; 80:20-22; 89:8-21); (Reginato Aff., Ex. 11, Zochart Depo., p. 121:1-13.)

**RESPONSE:** Disputed. It was mandatory for lifeguards at Regner Park beach to enforce the rules: 1) that all swimmers must wear wristbands; 2) that an adult must accompany children age five at all times and must be within arms reach; and 3) that if a small child was up to their waist in water without an adult, that child must immediately be removed from the water. These rules were in place for the safety of children and there was no discretion whether to enforce these rules. It was mandatory. (Lang Aff. Ex. 4, Ehmke Depo., p. 29:8-19; Lang Aff. Ex. 6, Zamzow Depo., pp. 45:8-46:24; 101:8-14; 109:10-111:10; Lang Aff. Ex. 3, Zochart Depo., pp. 22:5-11; 23:21-24; Lang Aff. Ex. 7, Millard Depo., pp. 34:19-35:17; Lang Aff. Ex. 5, Kaphingst Depo., p. 28:1-29:6.)

85. Prior to filing this lawsuit, Plaintiffs' counsel served a notice of circumstances and claim upon the City Parks Director, Craig Hoeppner. (Hoeppner Aff., ¶ 4.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

86. No other notice of circumstances and/or claim was served upon Craig Hoeppner or the City of West Bend prior to the filing of this lawsuit. (Hoeppner Aff., ¶¶ 4-6); (Gundrum Aff., ¶¶ 1-5.)

**RESPONSE:** Not disputed for the purpose of defendants' motion for summary judgment. Affirmatively state that the City of West Bend notified their own insurer regarding the notice of claim.

87. Craig Hoeppner is not authorized to accept service of a notice of circumstances and/or claim on behalf of the City of West Bend. (Hoeppner Aff., ¶ 3.)

**RESPONSE:** Disputed, this is a legal conclusion. The statute requires notice.

18

88. The notice of circumstances and claim which was served by Plaintiffs' counsel only named/identified Swannie Her, Connie Her, Chong Her, and Thavon Her. (Hoeppner Aff., ¶ 4.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

89. The Estate of Swannie Her, Ekin Her, Jasmine Her, Alexander Hernandez, Evangelin Her, Chuexng Her, Jovanyel Ramirez-Chang, Jhovanny Ramirez-Change, and Chueve Her were not named/identified in the notice of circumstances and claim. (Hoeppner Aff., ¶¶ 4- 5); (Gundrum Aff., ¶¶ 1-5.)

**RESPONSE:** Not disputed for the purpose of defendant's motion for summary judgment.

90. During her deposition, Connie testified that she felt "the pond was a safe area for children" before Swannie went swimming on June 11, 2016. (Reginato Aff., Ex. 1, Connie Depo., p. 90:16-22.)

**RESPONSE:** Disputed. Connie believed that it was safe for Swannie to enter the water because there were lifeguards near her and that they would be watching her and she believed they would watch her. (Lang Aff. Ex. 1, Connie Depo., pp. 70:1-6; 76-77:21-1; 77:14-18.)

Dated August 31, 2018.

By: s/ David J. Lang
David J. Lang
JUDGE LANG & KATERS, LLC.
8112 W. Bluemound Road, Ste. 101
Wauwatosa, WI 53213
P: (414) 777-0778
F: (414) 777-0776
dlang@jlk-law.com

and-

**Gende Law Office, S.C.**
By: s/ James J. Gende II
James J. Gende II (SBN: 1030921)
GENDE LAW OFFICE, S.C.
N28W2300 Roundy Dr., Ste. 200
Pewaukee, WI 53072
P: (262) 970-8500
F: (262) 970-7100
JGende@jamesgendelaw.com
Attorneys for Plaintiffs