

In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 18-3524

THE ESTATE OF SWANNIE HER, et al.,

        *Plaintiffs-Appellants*,

*v.*

CRAIG HOEPPNER,
Parks Director for the
City of West Bend, et al.,

        *Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 17-CV-1015 — **Nancy Joseph**, *Magistrate Judge*.

_____

ARGUED MAY 29, 2019 — DECIDED SEPTEMBER 26, 2019

_____

Before KANNE, SYKES, and BRENNAN, *Circuit Judges*.

SYKES, *Circuit Judge*. A June afternoon in Wisconsin took a tragic turn when six-year-old Swannie Her was found unresponsive on the bottom of a man-made swimming pond operated by the City of West Bend. She never regained consciousness and died a few days later.

Swannie's estate, her mother, and her siblings filed suit alleging that she died as a result of federal constitutional and state-law violations by the West Bend Parks Director, the seven lifeguards who were on duty, and the City. The constitutional claim arises under 42 U.S.C. § 1983 and alleges a deprivation of life without due process in violation of rights secured by the Fourteenth Amendment. The theory of the claim rests on two contentions: (1) the City's swimming pond is a state-created danger and (2) the defendants acted or failed to act in a way that increased the danger. A magistrate judge entered summary judgment for the defendants, ruling that the evidence is insufficient to permit a reasonable jury to find a due-process violation premised on a state-created danger. The judge relinquished jurisdiction over the state-law claims, setting up this appeal.

We affirm. Liability for injury from a state-created danger is an exception to the general rule that the Due Process Clause confers no affirmative right to governmental aid. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Our caselaw construes this exception narrowly, and the judge correctly concluded that this case falls outside its boundaries. No reasonable jury could find that the defendants created a danger just by operating a public swimming pond or that they did anything to increase the danger to Swannie before she drowned. Nor was their conduct so egregious and culpable that it "shocks the conscience," a necessary predicate for a court to find that an injury from a state-created danger amounts to a due-process violation.

## I. Background

The City of West Bend owns and operates Regner Park, a large public area with several recreational options. During

the summer months, patrons can cool off in the park's manmade swimming pond for a small fee. Like other bodies of water with organic floors, the Regner Park pond is murky. Visibility is limited to roughly six inches below the surface, and swimmers more than two feet from shore cannot see the bottom.

The pond is divided into three zones: Zone 1, the general swimming area, ranges in depth up to a maximum of five feet. Zone 2, which features a diving raft, is the center of the pond and reaches a depth of fifteen feet. And Zone 3, the children's play area, is no more than three-feet deep. Ropes and buoys cordon off the three zones; they also mark points where the water gets deeper. Swimmers wishing to enter Zone 2—or otherwise enter water deeper than their armpits—must pass a swim test, at which point they receive a special wristband signifying that they are permitted to do so.

Lifeguards employed by the City patrol the pond. Each lifeguard is certified in basic lifeguarding practices and receives pond-specific instruction. They also receive the West Bend Aquatic Manual & Emergency Response Plan, a guidebook to preventing accidents at the pond. Most importantly, the manual urges lifeguards to keep close watch on inexperienced swimmers and small children. The parties debate whether those surveillance responsibilities are "mandatory," as the plaintiffs characterize them, or if lifeguards "[a]re allowed to use their judgment and discretion when scanning the water to determine where to focus their attention," as the defendants maintain.

On June 11, 2016, the Her family—mother Connie, her fiancé, and nine of her ten children—gathered in Regner Park to celebrate a relative's second birthday. The party took

place at a picnic area near the swimming pond. Young Swannie arrived at roughly 5 p.m. that afternoon with two of her siblings. After greeting family and friends, she donned her bathing suit and obtained her mother's permission to swim in the pond. Connie did not accompany Swannie but rather asked two of her older children—Evangelin, age 9, and Thvon, age 14—to keep an eye on their younger sister. Swannie received a general admission wristband, but she never took the swim test required to swim in water above her armpits.

The Her children began swimming in Zone 3. At some point Swannie said she wanted to go see Ekin, another sibling, in a deeper part of the pond. No one knows precisely when or where Swannie went beneath the surface; neither the seven lifeguards on duty nor any member of the Her family or anyone else at the pond witnessed it. But at 5:55 p.m. a man swimming in Zone 2 discovered Swannie unresponsive at the bottom of the pond. He carried her out of the water and called for help. The lifeguards immediately called 911 and began resuscitation efforts. Emergency medical responders took Swannie to a nearby hospital, but she never regained consciousness and died several days later.

Swannie's estate, together with Connie and her surviving children (collectively "the Estate"), filed this lawsuit the following year. The defendants are Parks Director Craig Hoeppner, the City and its insurer, and the seven lifeguards who were on duty that day. The complaint seeks damages under § 1983 for violation of Swannie's Fourteenth Amendment right to due process. The claim rests on the doctrine of "state-created danger": the Estate claims that the defendants created and operated a dangerously murky pond and failed

No. 18-3524                                                                 5

to follow established lifeguarding rules, increasing the danger to Swannie. The suit also raised state-law claims for negligence, wrongful death, and a violation of Wisconsin's Safe Place Statute.

The defendants moved for summary judgment, and the magistrate judge granted the motion, concluding that the Estate lacks evidence that the defendants created a danger by operating the swimming pond or increased a danger by their conduct on the day she drowned. The judge explained that any factual disputes about the adequacy of the pond's safety protocols raised at most a potential question of negligence, not a violation of due process. The judge relinquished supplemental jurisdiction over the state-law claims and entered final judgment for the defendants.

## II. Discussion

We review a summary judgment de novo, construing the record and drawing all reasonable inferences in the plaintiffs' favor as the nonmoving parties. *Wilson-Trattner v. Campbell*, 863 F.3d 589, 593 (7th Cir. 2017). Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review the magistrate judge's decision to relinquish supplemental jurisdiction for an abuse of discretion. *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018).

The Fourteenth Amendment provides that "[n]o state shall … deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Supreme Court has cautioned that the Due Process Clause "does not transform every tort committed by a state

actor into a constitutional violation." *DeShaney*, 489 U.S. at 202. More specifically, the Clause "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196.

There are two recognized exceptions to the *DeShaney* rule. First, when a public official "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced," the official may be liable for a due-process violation if injury results. *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998) (quotation marks omitted). The second exception comes into play when "the state has a 'special relationship' with a person, that is, if the state has custody of a person, thus cutting off alternative avenues of aid." *Id*.

The exception for state-created dangers is at issue here, but it's quite narrow and reserved for "egregious" conduct by public officials. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). A due-process claim of this kind requires proof of three elements: (1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question "shocks the conscience." *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015) (quotation marks omitted). The third element—conscience-shocking conduct—requires a culpable state of mind equivalent to deliberate indifference. *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007). Elsewhere we've referred to this as a requirement of criminal

No. 18-3524 7

recklessness. *See Slade v. Bd. of Sch. Dirs. of Milwaukee*, 702 F.3d 1027, 1033 (7th Cir. 2012).

Viewing the evidence in the light most favorable to the Estate, we agree with the magistrate judge that the record falls far short on each of these elements. The Estate emphasizes that the swimming pond was "murky" and had poor visibility and "uneven topography." That's true of man-made swimming holes in general, and many natural lakes as well. There's no evidence that the Regner Park swimming pond is distinctively dangerous.

The Estate also points to testimony from the defense expert describing swimming as an "inherently dangerous activity." That's certainly true. As even experienced swimmers will concede, any body of water—whether man-made or natural—presents inherent dangers, especially to children. *See id.* at 1032 (observing that most adults understand that "lakes and other natural bodies of water, even inland water, are dangerous because of currents and uneven depth, and especially to children"). Swimming, or participating in any water-based recreational activity for that matter, exposes participants to risk of injury, including drowning.

And while operating any public swimming facility invites swimmers to expose themselves to the dangers inherent in this activity, liability under the Due Process Clause doesn't attach "just because the danger materializes." *Id.* at 1031. After all, "[d]angers to the public at large are insufficient for constitutional purposes." *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009). The Estate needs specific evidence that *this particular* swimming pond is especially dangerous for a young child like Swannie. It has none.

In the end, the Estate's argument boils down to the remarkable assertion that a municipal swimming pond is by its nature a state-created danger. That proposition, if adopted, would turn every tort injury at a public pond or pool into a constitutional violation. Federal constitutional claims involving public playgrounds and practice fields wouldn't be far behind. Indeed, the Estate's preferred result "would potentially set up a federal question whenever an accident happens during activities sponsored by the state." *Waybright v. Frederick County*, 528 F.3d 199, 208 (4th Cir. 2008). But the Fourteenth Amendment doesn't displace state tort law by transforming accidents at public facilities into federal constitutional claims. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Our Constitution … does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.").

Perhaps aware that its broad position is untenable, the Estate falls back on a narrower argument that the defendants *increased* a danger to Swannie. But this theory is no stronger because there's no evidence that the defendants actively "did something that turned a potential danger into an actual one." *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 548 F.3d 595, 600 (7th Cir. 2008). The Estate argues that the City failed to take proper safety precautions, like dredging the bottom of the pond, and the lifeguards failed to comply with the park's "mandatory" rules involving small children. And it emphasizes evidence that the pond was especially crowded on the afternoon in question, and at one point a lifeguard admitting to being "overwhelmed" by the number of swimmers.

No. 18-3524 9

But we've explained that *DeShaney* draws an "essential distinction between *endangering* and *failing to protect*." *Id.* at 599 (emphases added). The former may amount to a constitutional violation if other facts are present; the latter is simple negligence. Moreover, no evidence suggests that the lifeguards disregarded their training. Each lifeguard was charged with scanning the swimming pond for signs of trouble and responding as needed. That Swannie slipped beneath the surface without being noticed by *anyone*—lifeguard, family member, or anybody else at the pond—reflects the heartbreaking reality of childhood drownings. But it's not evidence that the defendants took affirmative steps that created or increased a danger to Swannie.

The Estate's difficulty articulating a theory of the case that might situate this claim within the law of state-created dangers reflects the fundamental problem with its position: this is at most a negligence claim. To be sure, "[n]ot paying enough attention to a child and thus allowing the child to … drown is terribly tragic, and possibly even negligent." *DeAnzona v. City & County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000). But mere negligence is "categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Indeed, "governmental defendants must act with a *mens rea* akin to criminal recklessness for constitutional liability to attach." *Flint*, 791 F.3d at 770.

We made this point clear in *Slade*, another drowning case brought on a theory of state-created danger. There, a middle-school student drowned on a field trip to a park with a large natural lake. 702 F.3d at 1028–29. Swimming was anticipated; indeed, parents were asked to indicate when signing the

permission slip whether their student was allowed to swim. The school district had a rule prohibiting swimming on field trips unless a lifeguard is present. No lifeguard was present that day, but the assistant principal let the students swim anyway and a seventh-grade boy drowned. We noted that the assistant principal "was negligent and her negligence enhanced the danger inherent in swimming in a lake: she disobeyed the rule requiring the presence of a lifeguard even though she knew that portions of the designated swimming area were so deep that the water was over the head of some of the kids." *Id.* at 1032. While that negligence may have increased the risk of danger to the student, it was not the type of reckless, conscience-shocking conduct that might be actionable as a constitutional violation. *Id.* at 1032–33.

*Slade* involved far more blameworthy conduct than what occurred here, and still we rejected the due-process claim. Despite the tragic loss of life, *Slade* hewed closely to the principle that the Due Process Clause cannot be interpreted "to impose federal duties that are analogous to those traditionally imposed by state tort law." *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992). We do the same here. On this record, no reasonable jury could find that the defendants created or increased a danger to Swannie or that they were deliberately indifferent to the danger. The judge was right to enter summary judgment for the defendants.

AFFIRMED

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## FINAL JUDGMENT

September 26, 2019

Before:　　　MICHAEL S. KANNE, Circuit Judge
　　　　　　　DIANE S. SYKES, Circuit Judge
　　　　　　　MICHAEL B. BRENNAN, Circuit Judge

| No. 18-3524 | THE ESTATE OF SWANNIE HER, et al.,<br>　Plaintiffs - Appellants<br><br>v.<br><br>CRAIG HOEPPNER, et al.,<br>　Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:17-cv-01015-NJ<br>Eastern District of Wisconsin<br>Magistrate Judge Nancy Joseph ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

October 18, 2019

To:   Stephen C. Dries
      UNITED STATES DISTRICT COURT
      Eastern District of Wisconsin
      Milwaukee , WI 53202-0000

| | |
|---|---|
| No. 18-3524 | THE ESTATE OF SWANNIE HER, et al., <br> Plaintiffs - Appellants <br><br> v. <br><br> CRAIG HOEPPNER, et al., <br> Defendants - Appellees |
| **Originating Case Information:** ||
| District Court No: 2:17-cv-01015-NJ <br> Eastern District of Wisconsin <br> Magistrate Judge Nancy Joseph ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| | |
|---|---|
| AMOUNT OF BILL OF COSTS (do not include the $): | 103.50 |
| | |
| DATE OF MANDATE OR AGENCY CLOSING LETTER ISSUANCE: | 10/18/2019 |
| | |

RECORD ON APPEAL STATUS:     No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

------------------------------------

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

| **Date:** | **Received by:** |
|---|---|
| 10/18/2019 | /s/ D. La Brie |
| _____ | _____ |

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## BILL OF COSTS

October 18, 2019

Taxed in Favor of: **Appellee Craig Hoeppner ; Appellee Cassidy Holbrook ; Appellee Michaela Millard ; Appellee Ryan Zamrow ; Appellee Brogan Zochert**

| | |
|---|---|
| No. 18-3524 | THE ESTATE OF SWANNIE HER, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>CRAIG HOEPPNER, et al.,<br> Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:17-cv-01015-NJ<br>Eastern District of Wisconsin<br>Magistrate Judge Nancy Joseph | |

The mandate or agency closing letter issued in this cause on October 18, 2019.

BILL OF COSTS issued in the amount of: $103.50.

|   |   | Cost of<br>Each Item | Total Cost<br>Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: _____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page: _____ | _____ | _____ |

3.  For reproduction of briefs:  _____  $103.50
    _____

4.  _____  _____  _____
    _____

5.  _____  _____  _____
    _____

                                                          TOTAL:     $103.50

form name: **c7_BillOfCosts**(form ID: **140**)